## THE EMPIRE.

### GULF PORT STEAMSHIP CO., Limited, v. THOMAS et al.

(Circuit Court of Appeals, Fifth Circuit. May 28, 1895.)

#### No. 369.

CHARTER PARTY—EXECUTION BY SHIP BROKERS ON TELEGRAPHIC CONTRACT—VARIANCE—GUARANTY OF TONNAGE.

Ship brokers in New Orleans cabled ship brokers in Liverpool that they wanted a steamer for 2,500 tons oil cake or meal at 20 shillings per ton. This offer was communicated by the Liverpool brokers to the owners of the steamer Empire, but was refused on the ground that she could not carry her dead weight in freight of that character. The owners, however, made a counter offer, pursuant to which the Liverpool brokers cabled that the ship would take "a full cargo of oil cake, meal, or flour * * * guarantied 2,500 tons d. w. c. [dead-weight cargo] ex-bunkers." The New Orleans brokers replied that they had "closed, in accordance with telegrams exchanged," in answer to which the Liverpool brokers telegraphed, "We confirm charter." The charter was drawn by the New Orleans brokers, but, in place of the terms contained in the cabled offer of the owners, it read, "guarantied to carry not less than 2,500 tons (of 2,240 lbs.) of cargo." *Held*, that the real guaranty was to carry 2,500 tons dead-weight cargo, and that the inability of the steamer to carry 2,500 tons of light cargo like oil cake was no breach of the guaranty.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

This was a libel by the Gulf Port Steamship Company, Limited, a corporation under the laws of Louisiana, and doing business in New Orleans, against the steamship Empire, William Thomas & Co., of Liverpool, England, claimants, to recover damages for breach of a charter party. The breach alleged consisted in the failure of the steamship to take the full amount of 2,500 tons of cottonseed oil cake or meal, tendered by libelant, it being claimed by it that she was guarantied by the charter party under which she was laden to carry that quantity. A cross libel was filed by the claimants for freight alleged to be due, and for demurrage and other charges. The district court entered a decree dismissing both the libel and the cross libel. The libelant alone appeals.

The charter party was executed under the following circumstances: On March 22, 1892, Ross, Howe & Merrow, ship brokers in New Orleans, cabled to Simpson, Spence & Young, ship brokers in Liverpool, that they "wanted a steamer for not more than 2,500 tons oil cake, and, or meal, and, or flour, in sacks, 20 shillings." Simpson, Spence & Young quoted this offer the next day, in Liverpool to all their correspondents, among them William Thomas & Co., owners of the Empire. William Thomas & Co. refused to accept 20 shillings a ton for a cargo of oil cake, on the ground that they did not think that the steamer would carry her dead weight of such cargo. They, however, made a counter proposition, which was cabled by Simpson, Spence & Young to Ross, Howe & Merrow. This offer was to charter for a lump sum, the ship to take "a full cargo of oil cake, meal, or flour * * * guarantied 2,500 tons d. w. c. [dead-weight cargo] ex-bunkers." On the next day Ross, Howe & Merrow replied that they had "closed in accordance with telegrams exchanged." The same day the Liverpool brokers, acting on the reply of Ross, Howe & Merrow that the latter would draw the charter "in accordance with telegrams exchanged," cabled as follows: "We confirm charter. Send six copies of charter party at once." The Liverpool brokers then wrote the following letter to the owners of the steamship:

"Liverpool, March 25, 1892.

"Messrs. Wm. Thomas & Co., Liverpool, 'Empire'—Dear Sirs: We have closed this steamer subject to your confirmation for the New Orleans freight at 2,600 pounds to Glasgow, Hull, Newcastle, Hamburg, Antwerp, Rotterdam, Amsterdam, or Bremen,—2,500 pounds if ordered to Plymouth, Avonmouth, Liverpool, or London, twelve weather working days for loading ex S. and H., free of dispatch money, 2½ per cent. address, canceling nonreadiness 5th May, charterer's stevedore to be employed as customary, at current rates, all other usual conditions of charter, steamer guarantying 2,500 tons dead-weight ex-bunkers. We strongly advise you to confirm, as we are quite certain this is the best business in the market. For grain charterers now only offer to-day 39 c. f. o., with 25th April, canceling, and from the Northern ports the outside obtainable for April-May loading is 3-3 c. f. o. We have special order from Philadelphia to Copenhagen or Aarhuns at 3-6, option Stettin, 3-9.

"Yours, faithfully,      [Signed] Per pro Simpson, Spence & Young.

"Cargo oil cake, and, or meal, and, or flour in sacks.      J. T. G.

"[Indorsed on face in corner free of cables.]      J. T. G."

On the same day the Liverpool brokers wrote again to the owners of the steamship the following letter:

"March 25, 1892.

"Messrs. Wm. Thomas & Co., Liverpool—Dear Sirs: In accordance with your authority, we are now cabling our New Orleans friends concerning charter S. S. 'Empire' on terms of our letter to you this morning. We thank you for the authority, and will hand you copies of charter immediately they come to hand.

"Yours, faithfully,      Per pro Simpson, Spence & Young,
"J. T. Gibson."

The charter, however, as drawn in New Orleans by Ross, Howe & Merrow, instead of the guaranty of 2,500 tons dead weight, etc., read, "guarantied to

carry not less than 2,500 tons (of 2,240 pounds) of cargo." Without waiting for the arrival of the copies of the charter party, the ship was ordered to New Orleans, the owners delivering to her captain the first letter written to them on March 25, by Simpson, Spence & Young, and which contained a statement of the terms which they had authorized to be incorporated in the charter party. On arrival at New Orleans, the captain gave written notice to Ross, Howe & Merrow that he was ready to receive cargo "under charter dated 25th March, 1892." A copy of the charter party was handed to him in New Orleans, but he testified that he did not look at it, because he took it for granted that it was like the letter. It appears that the ship took all the cargo which she could properly carry, but that she had not sufficient space for the full 2,500 tons of light oil cake and meal tendered by libelant. Copies of the charter party having been received at Liverpool by Simpson, Spence & Young prior to April 14, 1892, they on that date wrote to Ross, Howe & Merrow a letter, containing the following: " 'Empire'—Charters duly received, and we passed same on to owner. We are surprised that you have made this charter out on the lump sum, 'B' form, which is entirely unusual, as it ought to have been made out on the usual oil-cake form of charter, you simply inserting the guaranty of 2,500 tons dead weight. Owner absolutely refuses to allow clause 7, and this must be erased. There are one or two other points in the charter which he objected to, but we have now got him to agree to them, and the charter is therefore all in order with the exception of clause 7, which must be entirely erased."

Clause 7 was not in controversy in this case. In respect to this letter, Mr. John T. Gibson, manager of Simpson, Spence & Young, in his deposition made the following explanation: "On or about the 10th April I received copies of the charter party from Messrs. Ross, Howe & Merrow, and sent a copy on to Messrs. William Thomas & Co., and Mr. Jones, Messrs. William Thomas & Co.'s clerk, subsequently came to see me about it. He pointed out that in the guaranty as to carrying capacity the word 'deadweight' was omitted. It is quite possible that I told him that it must have been an oversight on the part of Messrs. Ross, Howe & Merrow, as it was arranged in the cablegrams that that was the guaranty. I afterwards saw Mr. Thomas, but I do not recollect quite what passed between us, but I think it very likely that I also told him that it must have been an oversight on the part of Messrs. Ross, Howe & Merrow. After these interviews, I wrote out to America to put the matter right, and a true copy of my letter is now produced and shown to me, marked 'J. T. G. 5.' I annex copy of certain letters and cables now produced and shown to me, marked 'J. T. G. 6,' which are true copies of what passed subsequently between Messrs. Ross, Howe & Merrow and ourselves."

Guy M. Hornor, for appellant.

James McConnell, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PER CURIAM. The controlling question in this case is whether William Thomas & Co., owners of the steamship Empire, in charter·ing said steamship to the Gulf Port Steamship Company, guarantied said steamship to carry a cargo of not less than 2,500 tons of cotton·seed oil cake, and, or meal, and, or flour, in sacks, or, as contended by the owners, the guaranty was for the ship to carry a cargo of 2,500 tons dead weight. The evidence is against the appellants, libelants in the court below, and, the district court having so found, the decree appealed from is affirmed.